### CARTER v. RINGSRUD, Secretary of State.

1. Under chapter 99, Laws 1891, which divides the public printing into five classes, enumerating what shall constitute each class, and requires the secretary of state, as *ex officio* commissioner of public printing, to advertise for proposals, and to "award separate contracts for each class," it is not allowable to break into these classes, and let selected portions of the same class to different parties.

2. The law must be understood and read as though its direction were to "award a separate contract for each class."

(Syllabus by the Court. Opinion filed Oct. 19, 1892.)

Application by Arthur L. Carter for a writ of prohibition to restrain Armond O. Ringsrud, as secretary of state and *ex officio* commissioner of public printing, from awarding and letting a contract for public printing on certain terms and to certain parties. Writ granted.

The facts are fully stated in the opinion. No briefs filed.

*Crawford & Deland*, for plaintiff.

*Robert Dollard, Attorney General*, for defendant.

KELLAM, J. This is an original application to this court for a writ of prohibition restraining the defendant, who as secretary

of state is by law *ex officio* commissioner of public printing, from awarding and letting a contract, upon the terms and to the parties named by plaintiff in his affidavit, for printing and binding "the permanent journals" of the two houses of the legislature for the ensuing year, as in violation of the provisions of chapter 99, Laws 1891. This law divides the public printing of the state into five classes, and authorizes the secretary of state, as *ex officio* commissioner of public printing, to advertise for proposals to do the same, and to make contracts for such work with the lowest and best bidder. The first and second classes are as follows: "First class. Printing and binding all bills for the two houses of the legislature, and such resolutions, petitions, and memorials as are required to be printed for daily use of the legislative assembly. Second class. Printing and binding the journals of the two houses of the legislature, and such reports, communications, and other documents as enter into and make up the journals." Then follow, "Third class," "Fourth class," and "Fifth class," particularly enumerating what shall be included in each. It will be observed that the proposal referred to, the acceptance of which is sought to be enjoined, is for a part only of the work constituting the second class, and the only question presented by this proceeding is whether all the work of each individual class must be included in and covered by one contract, or whether different items in any class may be bid for and let separately; so that in any class there might be as many different contracts and as many different contractors as there were separate and distinct items of work in that class. We do not know definitely the theory upon which this classification was made, but it seems to be, in general, a grouping of different kinds of work, kindred in character, and was probably intended to secure uniformity in the execution and appearance of work of the same general class or kind. For instance, the first class covers the "printing and binding of all bills for the two houses," etc. The binding of these bills is a very different kind of binding from that contemplated by class 2, which includes the "printing and binding of the journals of the two houses," etc. Similar distinguishing features exist with reference to the work enumerated in the other classes.

23—S. D.

It might also have been in the legislative mind to classify all the public printing of the state, with reference to its character and style, and consequently the mechanical facilities required for its proper execution, so as to afford different offices an opportunity to bid for that class of the work which they were best equipped to do; but, whatever the reasons, the command of the law seems reasonably plain that all the work of each class shall be let in a separate contract.

In the fact, and number and matter of its classification, the law under consideration seems to follow that of Minnesota, but in the latter law each class is followed by the words, "and shall be let in one contract." In North Dakota, under a similar classification, the law requires the first and second classes to be let together, in one contract, and the 3d, 4th, and 5th in separate contracts. We think the same thought, as to putting the work of each class in a contract by itself, though not so perspicuously expressed as in Minnesota law, is covered by the words of section 4: "He (secretary of state) shall award separate contracts for each class of printing described herein," etc. It was suggested in the argument that if it were so intended the language of the law should have been that "a separate contract," instead of "separate contracts," should be awarded for each class. This is a fair criticism on the grammar of the law, but, if allowed to control its meaning, would lead to results so unreasonable as to repel the thought that the expression, "separate contracts for each class," was used deliberately, instead of "a separate contract for each class;" for, if thus critically construed, the law itself would prohibit the letting of all the work of any class in one contract, for it would require it to be let in "separate contracts;" that is, in more than one contract. Reading and construing all the provisions of the law together, we have no doubt that its intention was to follow the theory of the Minnesota law, and to require that all the work enumerated in each class should be let in one separate contract, and that it is not allowable to break into these classes, and let selected portions of the same class to different parties,— as to one the printing and to another the binding of the journals mentioned in the second class. We are therefore of the opinion

that it is not competent, under the terms of the law, for the secretary of state to accept a proposal or let a contract for printing the "permanent journals" of the two houses of the legislature separate and apart from the balance of the work enumerated in said class, but that all of each class must be let in one separate contract. As it is alleged in the affidavit of plaintiff, and conceded by the return of defendant, that this is what the defendant is about to do, other facts appearing justifying the jurisdiction of this court, and the propriety of the remedy in this case, the plaintiff is entitled to the writ as prayed for. The writ will issue accordingly. All the judges concur.